Richard William Brady has filed a petition for writ of certiorari seeking review of a judgment by the Circuit Court of Jefferson County, Birmingham Division. Brady contends that he is entitled to relief from a *Page 745 
judgment which held him in contempt of court for failure to pay alimony and child support as previously ordered by the circuit court.
Petitioner-Brady avers that on July 28, 1977 he was ordered to show cause as to why he should not be held in contempt for his failure to pay alimony and child support during the months of June, July and August of 1977. The amount of arrearage on these payments was $825 or $275 per month. A hearing was had on the rule nisi on August 17, 1977 and the court subsequently issued an order holding petitioner in contempt for his failure to pay alimony and child support as had been previously ordered. Petitioner was sentenced to the Jefferson County jail until such time as the amounts in arrears were paid. Sentence was suspended after petitioner filed a supersedeas bond pending this review.
At the hearing on the rule nisi there was no court reporter present to record the proceedings. Consequently a record of the testimony of the witnesses was prepared pursuant to Rule 10 (d) of the Alabama Rules of Appellate Procedure and this 10 (d) summary was made a part of the record in this proceeding.
Respondent (petitioner's former wife) argues that this court should not consider the 10 (d) summary in our review of this matter because petitioner could have had a verbatim transcript of the testimony made by a court reporter and attached to the record. In the absence of such a verbatim transcript, respondent contends that this court has no alternative but to affirm the judgment of the trial court.
Petitioner replies that he did not ask for the services of a court reporter[1] on the advice of his attorney. His attorney asserted in brief that he did not think that the proceedings warranted the cost involved because he did not believe his client to be in contempt of court.
Rule 10 (d), ARAP, provides in pertinent part that:
 "If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means source, including his recollection. . . ."
Rule 10 (d) clearly provides that if no transcript of the proceedings of a hearing is made then its provisions may be utilized. Moreover, Rule 10 (d) does not contain any language which could be construed to limit the circumstances under which the rule may be employed. In the instant case there was no verbatim transcription of the proceedings and the cost of such a transcription might certainly have been a significant consideration for a person who was being tried for contempt of court on the grounds that he had failed to pay alimony and child support — particularly in an instance such as this where a party claims he does not have the means to meet the support payments. We therefore conclude that Rule 10 (d) was properly utilized in the instant case.
As to the merits of this controversy, petitioner claims that he did not pay the alimony and child support in question because he was financially unable to do so, and he asserts that the evidence in the record supports this statement. Respondent replies by saying that the evidence does not support such a conclusion.
The 10 (d) summary contained the following evidence. Emily Patricia Brady (respondent) was divorced from Richard William Brady (petitioner) in October of 1976. Under the terms of an agreement entered into pursuant to this divorce, Mr. Brady was to pay Mrs. Brady $225 a month for the support of their minor son and another $50 a month as alimony. Mrs. Brady testified that until June of 1977 her former husband regularly made the payments agreed upon. However, she said that she had received no child support or alimony payments for the months of June, July and August of 1977. *Page 746 
At the time of the hearing in question Mrs. Brady and her young son resided at her parents' home in Birmingham. She receives monthly payments in the sum of $305 a month from social security as a result of a congenital heart defect which has rendered her permanently disabled. Her only other income was apparently that which she received from Mr. Brady in the form of alimony and child support. A portion of her total income is used to reimburse her parents for the food and lodging which they provide for Mrs. Brady and her child. The rest of the money is used to pay the salary of a female attendant who assists Mrs. Brady in her personal activities and in the care of her child. Mrs. Brady testified that she had engaged an attendant to aid her on the orders of her personal physician.
The testimony of Richard William Brady reveals that he was employed at a hospital pharmacy at the time of the parties' divorce. In addition to his employment, he was a pharmacy student at the Samford University School of Pharmacy in Birmingham, Alabama. However, on May 31, 1977 his employment as a pharmaceutical extern at Baptist Medical Center was involuntarily terminated. After losing his job. Mr. Brady began efforts to obtain another pharmacy-related position but at the time of the hearing in question he had not been successful in finding new employment.
Nonetheless, Mr. Brady remained in school during the period of his unemployment. He stated that he maintained his status as a student in order not to delay for another full year his scheduled graduation of May 1978. Moreover, he testified that if he had not stayed in school, he would have been required to pay a substantial amount of money as a result of the terms of various student loans which he had obtained to finance his education. He said that these loans become due and payable upon cessation of active student status.
Despite his continued enrollment in pharmaceutical school, Mr. Brady noted that his GI educational benefits were exhausted by May of 1977 and as a consequence they were discontinued the following month. Mr. Brady said that he informed his former wife of this occurrence and of the fact that he had lost his job. She did not dispute his testimony on this matter, admitting that she was aware of both these events.
Additional testimony by Mr. Brady was to the effect that he had remained in the apartment formerly occupied by him and his wife and that the monthly rent for this apartment was $175. He stated that there was no furniture in the apartment except a desk, a chair and a lamp which he used for studying. Indeed, the furnishings of his residence were so sparse that Mr. Brady testified that he had to sleep on the floor because there was no bed or mattress. Moreover, he pointed out that under the divorce decree which terminated the parties' marriage he was required to pay any outstanding bills or indebtedness which existed prior to the couple's divorce and that a number of these debts had remained unpaid. In addition to these unpaid bills, Brady had purchased a 1976 Ford automobile subsequent to the divorce and the payments on this car were $160 a month. Finally, Mr. Brady contended that he could not meet his various financial obligations, stating that his telephone service had been terminated due to the non-payment of his monthly telephone utility bill.
On the other hand, the 10 (d) summary does disclose some testimony that Mr. Brady made an effort to pay at least a part of the amount due on the obligations which he incurred as a result of his divorce. He stated that in May of 1977 he applied for and was granted a $500 loan on an unsecured personal note. He testified that he used a portion of the proceeds from this loan to pay his wife the June installment of the alimony and child support. He also said that he personally delivered this money to Mrs. Brady. This testimony was of course contrary to Mrs. Brady's earlier statements that she had not received any support payments from her former husband for the months of June, July and August of 1977. Nonetheless, Mr. Brady testified that two weeks prior to the hearing on the rule nisi he obtained $500 from his parents. The *Page 747 
record is silent as to the disposition of this $500.
On the basis of the evidence set out above the judgment of the trial court must be affirmed. We said in Gwin v. Gwin,55 Ala. App. 601, 318 So.2d 299 (1975) that:
 "When the husband has the means to pay alimony but willfully and contemptuously refuses to do so, he may be compelled through the use of contempt proceedings to pay. Ryan v. Ryan, 267 Ala. 677, 104 So.2d 700. But, the lack of ability to pay is a complete defense. Ex parte Stephenson, 252 Ala. 316, 40 So.2d 716."
However, in deciding whether the husband has or does not have the means to pay the alimony and child support previously ordered to be paid, this court can only look to see if there is any legal evidence to support the trial court's judgment. This is so for the reason that the basis of review here is by the writ of certiorari. Lovelady v. Lovelady, 281 Ala. 642,206 So.2d 886 (1968); Phelps v. Public Service Commission,46 Ala. App. 13, 237 So.2d 499 (1970). Of course, in the absence of any evidence or insufficient evidence, this court can set aside the trial court's decree. But we do not believe that the latter situation exists in the instant case.
The evidence is undisputed that petitioner paid the $275 per month to his ex-wife during the time he was working. It was only after he lost his job on May 31, 1977 and was notified of the termination of his veteran's educational benefits that he stopped making the payments to his former wife. Moreover, the June 1977 payment is in dispute. Petitioner says that he borrowed $500 on a ninety-day note in May 1977 and that he paid his ex-wife the $275 June installment out of that sum. His ex-wife denies receiving this money. Petitioner readily admits not making the July and August payments. His excuse is that he had no job and was not receiving any GI benefits. He testified that he had attempted to obtain new employment but that his efforts had been unsuccessful.
The petitioner admitted that he owned a 1976 Ford automobile on which the monthly payments were $160. However, he did not say whether this payment was in arrears. In addition, the apartment where he was living required a payment of $175 per month. But again petitioner did not say whether this indebtedness was in arrears. He did testify that he had no furniture in his apartment except a desk and chair and that his telephone had been disconnected because the monthly telephone bill had not been paid.
It was also shown that approximately two weeks prior to the hearing on the contempt citation petitioner received $500 from his parents. Despite this fact there is no evidence in the record which discloses how this money was spent. Nor is there any evidence of the existence or non-existence of bank accounts held by petitioner. Likewise, there is no evidence of the availability or absence of other sources of income which could be used by petitioner to meet his support payments. And the record is silent (except in regard to the telephone bill) on whether petitioner paid his bills during the period in question. In fact, there is no evidence on how petitioner lived or maintained himself from June of 1977 to the date of the hearing.
It did appear from the record that petitioner had outstanding some $20,000 in student loans.
Upon consideration of the evidence set out in the record and the inferences that the trial court could have drawn from it, we cannot say that the trial court erred in holding petitioner in contempt; therefore, we affirm the trial court's judgment.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] In the Jefferson County Circuit Court, Civil and Equity Divisions, court reporters attend only at the request of one or both parties and the requesting party pays for the reporter's services. *Page 748